UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| DUSTIN GRAHAM GILBERT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:24-cv-00372-JAW |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING RECOMMENDED DECISION OVER OBJECTION**

A federal magistrate judge recommends a federal district court dismiss a claim alleging the Maine Department of Health and Human Services deprived a patient, then a resident at a state psychiatric center, of his constitutional right to equal protection. The plaintiff filed two timely objections in which he asserts additional claims under the Americans with Disabilities Act, the Maine Tort Claims Act, and 42 U.S.C. § 1983. Having performed a de novo review, the court affirms the magistrate judge's recommended decision over the plaintiff's objection because the plaintiff's complaint and objection do not raise a colorable claim plausibly entitling the plaintiff to relief.

## I.   PROCEDURAL HISTORY

On November 1, 2024, Dustin Graham Gilbert, acting pro se, filed a complaint against the Maine Department of Health and Human Services (Maine DHHS) pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, alleging he was deprived of adequate outdoor time while a civil inpatient in the care

of Riverview Psychiatric Center (Riverview), a psychiatric hospital. *Compl. for a Civ. Case* at 4-8 (ECF No. 1) (*Compl.*). He seeks three million dollars in punitive damages. *Id.* at 8.

On February 4, 2025, the United States Magistrate Judge recommended the Court dismiss Mr. Gilbert's complaint. *Recommended Decision after Rev. of Pl.'s Compl.* (ECF No. 8) (*Recommended Decision*). Because the Magistrate Judge reviewed Mr. Gilbert's petition under 28 U.S.C. § 636(b)(1)(B), Mr. Gilbert had a right to de novo review by the district judge upon filing an objection within fourteen days of being served. 28 U.S.C. § 636(b)(1)(C). Mr. Gilbert timely objected to the recommended decision on February 12, 2025. *Resp. and Objs. to Mag.'s Recommended Decision* (ECF No. 9) (*Pl.'s Obj.*). On February 14, 2025, he filed two additional attachments to his objection. *Am. to Resp. and Objs. in [C]ase 2:24-cv-00372-JAW* (ECF No. 10) (*Pl.'s Obj. Am.*); *Clarification to Am.* (ECF No. 11) (*Pl.'s Obj. Am. Clarification*).

## II. THE MAGISTRATE JUDGE'S RECOMMENDED DECISION

Pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2)(B), the Magistrate Judge recommended that the Court dismiss Mr. Gilbert's complaint brought against Maine DHHS for several reasons. First, because Maine DHHS, an agency of the state of Maine, "is immune from suit in this Court under the doctrine of sovereign immunity exemplified by the Eleventh Amendment to the United States Constitution, regardless of the form of relief requested." *Recommended Decision* at 3 (citing *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 n.6 (1st Cir. 2009) ("A plaintiff

2

may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment")).  The Magistrate Judge thus concluded that Mr. Gilbert has no pathway to relief on his claim for punitive damages.  *Id.*

Second, the Magistrate Judge determined that even if the Court were to construe the Plaintiff's filings to include a request for prospective relief against a state official, his claim would still fail because "there is no clearly established law regarding the minimally constitutional amount of time that . . . civilly committed patients are entitled to outdoor exercise," *id.* (quoting *Carter v. Foulk*, No. C 09-5276 LHK (PR), 2012 U.S. Dist. LEXIS 129433, at *19 (N.D. Cal. Sept. 10, 2012) (citation amended)), and the seventy-five minutes of outdoor time Mr. Gilbert received per day "is considerably more than the time that courts have found insufficient in the context of other confined individuals."  *Id.* at 3-4 (citing *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (noting that the same court had previously held that a prison created unconstitutional conditions when outdoor exercise was restricted to forty-five minutes per week for a prolonged period)).

## III.    DUSTIN GRAHAM GILBERT'S OBJECTION AND ADDENDUM

### A.    The Objection

Mr. Gilbert's objection to the Magistrate Judge's recommendation that the Court dismiss his case raises new grounds for his entitlement to relief.  He says, "[i]n response to the Magistrate's recommended decision, the Plaintiff finds the Americans with Disabilities Act [(ADA)] was violated simply in Riverview Psychiatric Center's

'fresh airbreak' policy, which is essentially a [Maine DHHS] policy . . . of the ADA's Section 35.130[](a) and 35.130[](b)(1)([](ii) . . . defeating any argument that the state holds Sovereign Immunity over this suit." *Pl.'s Obj.* at 1.

He first says that Title II of the ADA provides "[n]o qualified individual with a disability . . . shall be subjected to discrimination by any public entity," *id.* (quoting 28 C.F.R. § 35.130(a)), and asserts he was "treated unfairly and unduly due to his disability at a public, state hospital" by Riverview's policy allotting inpatients seventy-five minutes of daily outdoor time, purportedly in violation of the United States Supreme Court's decision in *Youngberg v. Romeo*, 457 U.S. 307 (1982). *Id.* He says that, as a former inmate of the Maine State Prison system, he "received more time outdoors in its Intensive Mental Health Unit" than he did as an inpatient at Riverview, and thus the latter's policy "shows unfairness for a disabled person, including discrimination." *Id.*

Mr. Gilbert further asserts that Title II mandates "[a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability . . .. [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." *Id.* (quoting 28 C.F.R. § 35.130(b)(1)(ii)). He claims "since an equal amount of time outdoors as prisoners is not had, which is unfair, and since the Plaintiff was disabled while being in [Riverview][,] along with his designated disability[,] the ADA is violated in a second part." *Id.*

Finally, Mr. Gilbert posits that "[t]his case would transform Maine's psychiatric facilities in a new precedent, and potentially the country," averring "[i]t's an essential Liberty not being afforded to people who are vulnerable, of no crime . . . yet locked in a state facility that does house criminals as well.  It can induce new symptoms, be scary . . . and not allowing a great amount of space to feel more comfortable in the place, the Plaintiff feels it's neglect of all the patients' well being." *Id.* at 2.  Based on this, he claims "[t]he neglect appears to be a Tort violating the Maine Tort Claims Act as well . . . because the state is breaching a duty to get their involuntary inpatients outside as much or more than any Prisoner because they are under Supreme Court decision of *Youngberg v[.] Romeo*." *Id.* (referring to *Youngberg*, 457 U.S. 307).

### B.    The Addendum

Two days after submitting his objection, Mr. Gilbert filed two related attachments.  The first raises a claim under "the 1983 Act," *Pl.'s Obj. Am.* at 1, and the second clarifies that by this he means to invoke 42 U.S.C. § 1983. *Pl.'s Obj. Am. Clarification* at 1.  Mr. Gilbert says "the Plaintiff has found that under the 1983 Act, the state (staff) acted under the color of law when denying the Plaintiff his civil rights (of life, liberty and the pursuit of happiness) with their outdoor time policy . . . .  Once the state committed any civil rights violation . . . they no longer hold Sovereign Immunity." *Pl.'s Obj. Am.* at 1.

## IV.    LEGAL STANDARD

The Plaintiff timely filed an objection to the Magistrate Judge's Recommended Decision, and the Court thus "shall make a de novo determination of those portions of the . . . recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* 28 U.S.C. § 636(b)(1)(B).  At the same time, the Court is "only obliged to perform de novo review of disputed portions of the report and recommendation." *United States v. J.C.D.*, 861 F.3d 1, 6 (1st Cir. 2017).  Under this standard, the Court reviews factual findings for clear error, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), and gives plenary review to pure questions of law.  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

Mr. Gilbert's objection raises multiple new grounds for relief in his objection and related addendum that were not raised in his complaint, but caselaw of this district is clear that an objection to a recommended decision is not an opportunity to relitigate the issue by raising novel arguments.  *See Orchard v. United States*, 332 F. Supp. 2d 275, 276 (D. Me. 2004) ("A litigant is not permitted to raise new issues to the district judge in his objections to the recommendation of the magistrate judge") (citing *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984) ("Parties must take before the magistrate judge 'not only their "best shot" but all of their shots'").

6

## V.    DISCUSSION

Based on Mr. Gilbert's attempt to raise new issues before this Court that he did not raise before the Magistrate Judge, the Court could summarily affirm the Magistrate Judge's recommended decision. Mr. Gilbert makes no claim that he could not have raised these new issues before the Magistrate Judge or that there are exceptional circumstances justifying a deviation from this rule. *See Nelson v. Berryhill*, No. 16-2236, 2018 U.S. App. LEXIS 2398, at *2-3 (1st Cir. Jan. 24, 2018) (discussing the need for exceptional circumstances for a court to consider arguments not properly previously raised). Put differently, Mr. Gilbert's failure to raise these same issues before the Magistrate Judge provides an independent basis for rejecting his objections to the recommended decision.

Despite the directive of District of Maine Local Rule 72.1(a),[1] the Court will exercise its discretion and consider the contents of Mr. Gilbert's ADA, Maine Tort Claims Act (MTCA), and 42 U.S.C. § 1983 claims in light of its obligation to liberally construe the filings of a pro se litigant. *See Gakuba v. Frey*, Nos. 23-1084, 23-1095, 2024 U.S. App. LEXIS 18703, at *1 (1st Cir. Apr. 10, 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Pursuant to 28 U.S.C. §§ 363(b)(1)(B) and (C), the Court also reviews Mr. Gilbert's objection to the Magistrate Judge's recommended decision

---

[1]    "Within 14 days after being served a copy of an order, report, proposed findings or a recommended decision of a United States Magistrate Judge entered under 28 U.S.C. § 636(b)(1), a party seeking review shall file an objection with an incorporated memorandum of law to those specific portions for which review is sought." D. ME. LOC. R. 72.1(a).

regarding his equal protection claim de novo.  28 U.S.C. § 636(b)(1)(C); *see also* 28 U.S.C. § 636(b)(1)(B).

The Court thus has four claims before it: a Fourteenth Amendment equal protection claim, a claim of disability discrimination under Title II of the ADA, a 42 U.S.C. § 1983 claim based on an alleged due process violation, and a negligence claim under the MTCA.

### A.    The ADA and Equal Protection Claims

Mr. Gilbert brings a claim against Maine DHHS under the ADA and the Fourteenth Amendment's equal protection clause, seeking only punitive damages.  As an initial matter, punitive damages "are clearly not available on . . . [a] Title II claim," and, as such, Plaintiff is barred from seeking them. *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir.2003) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)). Although the Court could end its ADA analysis here, it proceeds to address the issue of sovereign immunity raised by the Plaintiff and addressed by the Magistrate Judge.

Because Mr. Gilbert seeks monetary relief from a state agency, the Court considers whether the Government has abrogated its sovereign immunity on these claims.  The Magistrate Judge determined the Eleventh Amendment barred Mr. Gilbert's equal protection claim but was not presented with, and thus did not consider, the Title II claim that Mr. Gilbert's objection raises in the first instance.  As Mr. Gilbert responds to the Magistrate Judge's equal protection analysis by contending that his Fourteenth Amendment claim implicates the ADA and "defeat[s]

any argument that the state holds Sovereign Immunity over this suit," the Court addresses Mr. Gilbert's Title II and equal protection claims together.

The Supreme Court has interpreted the Eleventh Amendment to deprive the federal courts of subject matter jurisdiction over suits by any citizen against any state. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity extends to agencies under state control. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

Maine DHHS is an agency of the state of Maine, and thus for Eleventh Amendment purposes a suit against the agency is a suit against the state. *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 144. The *Ex parte Young* exception[2] to the Eleventh Amendment for suits against state officers in their official capacities does not extend to suits against state agencies. *Irizarry-Mora v. Univ. of P.R.*, 647 F.3d 9, 11 n.1 (1st Cir. 2011). However, under a narrow range of circumstances, Congress may strip a state of sovereign immunity with respect to a statute enacted under § 5 of the Fourteenth Amendment. *Seminole Tribe*, 517 U.S. at 55-56. Title II of the ADA purports to perform just such an abrogation with respect to violations of Title II. 42 U.S.C. § 12202.[3]

---

[2]    "[T]he Ex parte Young exception applies only when individuals seek prospective relief against a state official's ongoing violation of federal law." *Cotto v. Campbell*, 126 F.4th 761 (1st Cir. 2025) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

[3]    42 U.S.C. § 12202 states: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

The Supreme Court applies a three-step analysis to determine when the Title II abrogation of sovereign immunity is effective:

> [The court should determine,] on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006).

Here, Mr. Gilbert appears to argue that a Title II violation has occurred based on his claim that Maine DHHS is treating individuals with disabilities differently than individuals who are incarcerated, an alleged difference in treatment of a class of people based on disability which could violate the equal protection clause of the Fourteenth Amendment, and therefore state a claim under Title II. *See Buchanan v. Maine*, 377 F. Supp. 2d 276, 283 (D. Me. 2005), *aff'd on other grounds*, 469 F.3d 158 (1st Cir. 2006) (*Buchanan I*) (stating that, although Title II of the ADA does not validly abrogate state sovereign immunity, disability discrimination nonetheless could be considered a violation of the Equal Protection Clause subject to rational basis review). Theoretically, such conduct *might* violate the Fourteenth Amendment under rational basis review.

The First Circuit considered the issue in *Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006), and determined that a discrimination claim based on disability remains subject only to rational basis review, and that it does not violate the Fourteenth Amendment at the second stage of the *Georgia* analysis. *Id.* at 33-34 ("The disabled are not a suspect class for equal protection purposes"); *see also Pope v. Bernard*, No.

10-1443, 2011 U.S. App. LEXIS 2764, at *6-7 (1st Cir. Feb. 10, 2011) (reiterating that disability discrimination remains subject only to rational basis review) (citation amended); *accord Buchanan I*, 377 F. Supp. 2d at 283 (concluding that only fundamental rights trigger sovereign immunity abrogation under Title II, and disability is not such a right).

In sum, in light of this authoritative precedent on the issue, the Court cannot conclude that the alleged disability discrimination here violates the Fourteenth Amendment for the purposes of abrogating sovereign immunity.

Because application of the first two steps in the *Georgia* analysis disposes of his Fourteenth Amendment claims, the only claims left are Mr. Gilbert's allegations of conduct that violates Title II of the ADA; on these claims the Court moves to the third step of the *Georgia* analysis to determine if "Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. This Court previously performed an identical analysis in *Buchanan I* to conclude that the Title II abrogation of sovereign immunity is not valid for access to state mental health services.[4] 377 F. Supp. 2d at 279-83; *accord Draper v. Me. Dep't of Health & Hum. Servs.*, 2:13-cv-00028-JAW, 2013 U.S. Dist. LEXIS 121506, at *18

---

[4]    In *Buchanan I*, the Court noted that "the closest First Circuit case is *Kiman v. New Hampshire Dep't of Corrections*, [2001 WL 1636431 (D.N.H. Dec. 19, 2001)]," but *Kiman* was then on appeal. *Buchanan I*, 377 F. Supp. 2d, at 282 n.8. After the Supreme Court's decision in *Lane*, the First Circuit decided that the *Kiman* plaintiff's claims might have merit under the first step of the *Georgia* analysis and remanded the matter to the District Court for reconsideration both of the merits and of the Eleventh Amendment bar. *Kiman v. N.H. Dep't of Corrections*, 451 F.3d 274, 281-82 (1st Cir. 2006). On remand the District Court determined that the defendants had abandoned their sovereign immunity defense and therefore did not reach the issue. *Kiman v. N.H. Dep't of Corrections*, No. 01-cv-134-JD, 2007 WL 2247843, at *6 (D.N.H. Aug. 1, 2007). Consequently, the *Kiman* litigation did not produce any further guidance from the First Circuit on this issue.

(D. Me. Aug. 27, 2013).  Mr. Gilbert offers no compelling reason to abandon that
reasoning, and the Court stands by it.

In sum, Maine DHHS may assert the Eleventh Amendment as a bar to Mr.
Gilbert's Title II claim because the purported discrimination does not violate a
fundamental right protected by the Fourteenth Amendment and Congress has not
validly abrogated the State's sovereign immunity.  Having performed a de novo
review, the Court agrees with the Magistrate Judge that Mr. Gilbert does not have a
Title II or equal protection claim against Maine DHHS on account of the Defendant's
sovereign immunity.

### B.    The 42 U.S.C. § 1983 Claim

In an addendum to his objection, Mr. Gilbert avers "[o]nce the state committed
any civil rights violation, and in this case it's in [the] form of a policy, they no longer
hold Sovereign Immunity."  *Pl.'s Obj.* at 1.  He thus moves for relief on his equal
protection claim pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was unavailable. …

42 U.S.C. § 1983.  Section 1983 "'is not itself a source of substantive rights,' but merely
provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v.
Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3

(1979)).  To maintain a claim under § 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

However, to state a valid claim under § 1983, a complaint must bring such allegations against a "person" acting under color of state law.  42 U.S.C. § 1983.  It is well settled that neither a state nor its agencies are "persons" within the meaning of § 1983.  *See, e.g.*, *Poirier*, 558 F.3d at 97 & n.6; *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64, 70-71 (1989); *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity").  The Maine Department of Health and Human Services is not a person for purposes of § 1983 and, consequently, Plaintiff has failed to state a cognizable § 1983 claim against the Defendant.

The result would not be different even if the Court were to construe the Plaintiff's filings to include a request for prospective relief against a state official rather than the state agency, because, as the Magistrate Judge stated in his Recommended Decision, "there is no clearly established law regarding the minimally constitutional amount of time that . . . civilly committed patients are entitled to outdoor exercise."  *Recommended Decision* at 3 (quoting *Carter*, 2012 U.S. Dist. LEXIS 129433, at *19).

13

The Court agrees with the Magistrate Judge's analysis and, in light of Mr. Gilbert's objection, presses it further.  As noted, Mr. Gilbert's complaint alleges the Defendant's policy to "not let [him] outside . . . in a time of crisis, or in any time [he] was mandated to be in their custody, albeit as a 'civil inpatient' [is] nearly enough to [] deprive [him] of life ([his] natural functions and course of nature) and a basic liberty (going outdoors anytime)." *Compl.* at 7.  His complaint further says that Riverview's policy limits civil inpatients to five fifteen-minute "'fresh' airbreaks" a day, a policy he alleges provides less outdoor time than Maine state prisoners receive. *Id.* at 7-8.  Mr. Gilbert's objection expands upon what the Court construes as a substantive due process argument and cites the Supreme Court's holding in *Youngberg* that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Pl.'s Obj.* at 1 (citing *Youngberg*, 457 U.S. at 321-22).

The Court thus reviews *Youngberg* and its progeny to see if Mr. Gilbert has a colorable due process claim pursuant to § 1983 based on his allegation that civil inpatients at Riverview, including himself, receive less outdoor time than individuals criminally incarcerated in Maine.   In *Youngberg*, an individual involuntarily committed to a state institution alleged the institution violated his substantive due process rights by restricting his right to freedom of movement, among others, and brought a challenge pursuant to 42 U.S.C. § 1983. *Youngberg*, 457 U.S. at 309.  The *Youngberg* Court held that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals

whose conditions of confinement are designed to punish." *Id.* at 321-22. This is, in essence, the § 1983 claim Mr. Gilbert now presses.

However, *Youngberg* goes on to say that "interference by the federal judiciary with the internal operations of [state] institutions should be minimized," and "[m]oreover, there certainly is no reason to think judges and juries are better qualified than appropriate professionals in making such decisions." *Id.* at 322-23 (citing *Parham v. J.R.*, 442 U.S. 584, 607 (1979); *Bell v. Wolfish*, 41 U.S. 530, 544 (1979) (Courts should not "'second-guess the expert administrators on matters on which they are better informed'")). Thus, pursuant to the Supreme Court's holding in *Youngberg*, to prove his substantive due process claim against Maine DHHS, Mr. Gilbert would have to demonstrate that a decision by a professional "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* at 323.

By the Court's reading, *Youngberg* neither decides nor implies that a state's treatment of its prisoners establishes a baseline for the state's treatment of its civilly committed patients and, if in any facility the prisoners are treated comparatively better in a specific policy or procedure, the state has necessarily violated *Youngberg*. Instead, *Youngberg* holds that federal courts should not be in the business of trying to run state psychiatric institutions and, only where a court can conclude that state administrators have substantially departed from an accepted professional judgment, practice, or standard can the court allow the suit to proceed. *Id.* at 322-23. In other

15

words, *Youngberg* reinforces that state institutions must enjoy wide latitude in developing treatment regimens, based on an institution's unique differences in, among others, population, setting, and security issues.  *Id.* at 319-20.

Thus, while *Youngberg* "established that [the petitioner] retains liberty interests in safety and freedom from bodily restraint [while a civil inpatient]," the Supreme Court emphasized "these interests are not absolute; indeed to some extent they are in conflict.  In operating an institution such as Pennhurst, there are occasions in which it is necessary for the State to restrain the movement of residents—for example, to protect them as well as others from violence."  *Id.* at 320 (citing *Poe v. Ullman*, 367 U.S. 497, 542 (1961) (Harlan, J., dissenting) ("In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society'")).

These, indeed, are the principles for which *Youngberg* has been cited in this Circuit.  *See, e.g., Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011) ("while stressing that civilly committed persons are entitled to an extra margin of protection, the [*Youngberg*] Court also stated that there can be more than one reasonable judgment, and that the choice in such cases is for the professional") (citing *Youngberg*, 457 U.S. at 321, 324-35); *Connor B. v. Patrick*, 774 F.3d 45, 54-55 (1st Cir. 2014) (*Youngberg* . . . requires that courts presume that the decisions of qualified professionals . . . are valid . . .  Such deference to state officials is appropriate to minimize undue 'interference by the federal judiciary with the internal operations of [state]

16

institutions,' as '[i]t is not appropriate for the courts to specify which of several professionally accepted choice should have been made'") (quoting *Youngberg*, 457 U.S. at 321-22)). The First Circuit in *Connor B.*, a case involving foster children, further quoted the Supreme Court's holding that "the Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Connor B.*, 774 F.3d at 54-55 (1st Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) (in turn quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

Mr. Gilbert's complaint and objection state that Riverview's policy is to allow each patient five fifteen-minute fresh air breaks, a total of seventy-five minutes per day. While Mr. Gilbert challenges that the state's practice at times falls short of this goal, on its face the Court sees nothing unreasonable in allowing psychiatric patients seventy-five minutes of fresh air every day. Furthermore, there is no basis for the Court to conclude this policy "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* at 323. Thus, Mr. Gilbert's substantive due process claim must fail under *Youngberg* and its progeny.

There is one additional wrinkle that warrants discussion. Sixteen years after the Supreme Court decided *Youngberg*, it held in *Lewis* that executive branch actors violate an individual's constitutional rights "only if they engage in conduct that 'shocks the conscience.'" *Connor B.*, 774 F.3d at 53 (quoting *Lewis*, 523 U.S. at 846).

17

"In order to shock the conscience, the conduct must be 'truly outrageous, uncivilized, and intolerable.'" *McConkie v. Nichols*, 446 F.3d 258, 260 (1st Cir. 2006).  In *Connor B.*, the parties disputed the appropriate legal standard the plaintiffs must meet to show a constitutional violation, specifically whether plaintiffs must establish that the defendants' treatment of children "shocks the conscience," per *Lewis*, or whether it would suffice to show that defendants deviated from the more lenient absence of a professional judgment test from *Youngberg*.  *Connor B.*, 774 F.3d. at 52-53.  The *Connor B.* Court held "[w]e have no need to decide that legal question because the plaintiffs' evidence does not establish that even the *Youngberg* standard is met."  *Id.* at 53; *accord Bryan C. v. Lambrew*, 340 F.R.D. 501, 516 (D. Me. 2021) (citing *Connor B.*, 774 F.3d at 54).  The Court follows this wise approach here.  Having concluded Mr. Gilbert has not established a violation under *Youngberg*, the Court does not reach whether the Plaintiff has established a violation under the more demanding *Lewis* test.

In conclusion, after performing a de novo review, the Court affirms the Recommended Decision on the substantive due process claim Mr. Gilbert raises pursuant to 42 U.S.C. § 1983.

## C.    The MTCA Claim

Mr. Gilbert also alleges Maine DHHS committed tortious negligence in violation of the MTCA by "breaching a duty to get [Riverview's] involuntary inpatients outside as much or more than any Prisoner because they are under Supreme Court decision of *Youngberg v[.] Romeo*."  *Pl.'s Obj.* at 2.  The Plaintiff does

18

not point the Court to any provision in the MTCA that could provide them legal resource for their negligence allegation. However, because the First Circuit has instructed the district courts to interpret pro se pleadings liberally, *Gakuba v. Frey*, 2024 U.S. App. LEXIS 18703, at *1, the Court looks to the MTCA to see if there is a pathway to the Plaintiff's requested relief.

Maine DHHS is a state agency, and 14 M.R.S. § 8103, titled "Immunity from suit," says "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103. Mr. Gilbert, as noted, seeks three million dollars in punitive damages from Maine DHHS, and thus his tort claim may well be barred by the Defendant's sovereign immunity. *Compl.* at 8. However, the MTCA includes four specific carveouts to sovereign immunity from damages claims in 14 M.R.S. § 8104-A:

> Except as specified in section 8104-B, a governmental entity is liable for property damage, bodily injury or death in the following instances.
>
> 1. Ownership; maintenance or use of vehicles, machinery and equipment.
>
>    . . . .
>
> 2. Public buildings. A governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appearance of any public building. Notwithstanding this subsection, a governmental entity is not liable for any claim which results from:
>
>    A. The construction, ownership, maintenance or use of:
>
>       . . . .

> (3) Land, buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.
>
>     . . . .
>
> 3. Discharge of pollutants.
>
>     . . . .
>
> 4. Road construction, street cleaning or repair.

14 M.R.S. § 8104-A(1)-(4).

From the MTCA's plain language, it is clear that Maine DHHS is immune from the damages suit Mr. Gilbert brings, and no enumerated exception is available to the Plaintiff. "Because 'the MTCA employs an exception-to-immunity approach rather than an exception-to-liability approach,' when we consider the exceptions to immunity for governmental entities, 'we start from the premise that immunity is the rule and exceptions to immunity are to be strictly construed.'" *Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 8, 145 A.3d 1030 (quoting *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674); *see* JACK H. SIMMONDS, DONALD N. ZILLMAN & ROBERT H. FURBISH, MAINE TORT LAW, § 15.21 (2018 ed.) ("Immunity is the rule and governmental liability the exception"). In *Drake v. Smith*, 390 A.2d 541 (Me. 1978), the Maine Law Court wrote:

> The immunity of the sovereign from suit is one of the highest attributes inherent in the nature of sovereignty. Accordingly, the large majority of jurisdictions hold it necessary that the sovereign's consent to be sued be given by the Legislature, as the only appropriate body to speak in this regard on behalf of the sovereign.

*Id.* at 543.

Based on the foregoing, the Court dismisses the claim of tortious negligence that Mr. Gilbert brings in his objection to the Recommended Decision.

## VI. CONCLUSION

Having performed a de novo review pursuant to 28 U.S.C. § 363(b)(1)(B), the Court AFFIRMS the Recommended Decision After Review of Plaintiff's Complaint (ECF No. 8), OVERRULES the Response and Objections to Magistrate's Recommended Decision (ECF No. 9), and accordingly DISMISSES without prejudice the Complaint for a Civil Case (ECF No. 1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2025